The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 9, 2026

## 2026 COA 58

**No. 25CA0943, *Elk Creek Ranch Owners Ass'n v. Elk Creek Ranch Dev., Inc.* — Appeals — Court of Appeals — Jurisdiction — Final Appealable Order; Attorney Fees — Multiple Parties**

A division of the court of appeals addresses a novel issue of finality and appellate jurisdiction in the context of postjudgment proceedings for attorney fees. In this case, in which multiple parties made multiple fee requests, the division holds that the district court's order denying a request for attorney fees and costs against one party was not final and appealable until the district court had resolved all parties' fee requests.

Turning to the merits, the division holds that the district court misinterpreted a contractual fee-shifting provision by equating an undefined reference to "default" with a specifically defined contractual term. The division further holds that a breach of the

implied duty of good faith and fair dealing constitutes a "default" under the fee-shifting clause.

Finally, the division holds that the district court erred in its methodology for awarding attorney fees to one of the parties by calculating the lodestar amount using an unreasonable number of hours and only afterward applying a percentage reduction for excessive, unnecessary, or overstaffed work. The division holds that this approach is inconsistent with established law, which requires excluding unreasonable hours before calculating the lodestar.

Accordingly, the division reverses the district court's orders and remands the case for further proceedings consistent with this opinion.

Court of Appeals No. 25CA0943
Rio Blanco County District Court No. 17CV30015
Honorable Denise Lynch, Judge

Elk Creek Ranch Owners Association, a Colorado nonprofit corporation,

Plaintiff-Appellant,

v.

Elk Creek Ranch Development, Inc., a Colorado corporation; and YZ Ranch, LLC, a Colorado limited liability company,

Defendants-Appellees.

ORDERS REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

Announced July 9, 2026

Forbes Law Group, LLC, Peter C. Forbes, Denver, Colorado; GableGotwals, Byron C. Keeling, Houston, Texas, for Plaintiff-Appellant

Womble Bond Dickinson (US) LLP, Kris J. Kostolansky, Caitlin C. McHugh, Frances Staadt, Denver, Colorado, for Defendants-Appellees

¶ 1     This appeal concerns postjudgment attorney fee proceedings following extensive litigation over the administration of Elk Creek Ranch, a private fishing and hunting community.  The Elk Creek Ranch Owners Association (the Association) challenges two rulings of the district court: (1) the denial of its motion to recover attorney fees and costs from YZ Ranch, LLC (YZ Ranch), under a fee-shifting provision in a fishing lease; and (2) the award of $1,261,649.10 in attorney fees to Elk Creek Ranch Development, Inc. (ECRD).[1]

¶ 2     As an initial matter, we address a novel issue of finality and appellate jurisdiction in the context of postjudgment proceedings for attorney fees.  In this case, in which multiple parties made multiple fee requests, we hold that the district court's order denying the Association's request for attorney fees and costs against YZ Ranch was not final and appealable until the district court had resolved all parties' fee requests.

¶ 3     Turning to the merits, we conclude that the district court erred in two respects:

---

[1] The Association does not appeal the district court's award of costs to ECRD.

1

(1) The court erred by denying the Association's request for attorney fees against YZ Ranch. It misinterpreted the contractual fee-shifting provision by equating an undefined reference to "default" with a specifically defined lease term, thereby improperly restricting the Association's right to recover fees. We further hold that a breach of the implied duty of good faith and fair dealing constitutes a "default" under the fee-shifting clause, entitling the Association to reasonable attorney fees and costs from YZ Ranch.

(2) The court also erred in its methodology for awarding attorney fees to ECRD. It calculated the lodestar amount using an unreasonable number of hours and only afterward applied a percentage reduction for excessive, unnecessary, or overstaffed work. We hold that this approach is inconsistent with established law, which requires excluding unreasonable hours before calculating the lodestar.

¶ 4     We therefore reverse the district court's denial of fees and costs to the Association against YZ Ranch and its award of fees to

ECRD, and we remand the case for further proceedings consistent with this opinion.

## I.    Background

¶ 5    William H. Wheeler and his company ECRD established Elk Creek Ranch near Meeker.  Elk Creek Ranch began selling lots in 2007, with each lot owner becoming a member of the Association. Wheeler formed Elk Creek Operations, LLC (ECO), to serve as the Association's management company.  Wheeler and his family also established YZ Ranch, and, in 2006, YZ Ranch and ECO[2] entered into a long-term fishing lease granting Association members the right to fish on property owned by YZ Ranch.

¶ 6    In 2017, several individual Association members sued Wheeler, ECRD, ECO, and YZ Ranch.  As relevant here, they asserted that ECRD failed to pay assessments owed to the Association; ECO breached its management agreement with the Association by failing to ensure that ECRD paid its assessments; Wheeler breached his fiduciary duties to the Association; and YZ

---

[2] For purposes of this litigation, the parties to the fishing lease are YZ Ranch and the Association.  The court instructed the jury that "[t]he Association has a long-term fishing lease with YZ Ranch."

Ranch breached the fishing lease and the implied covenant of good faith and fair dealing contained therein by improperly restricting Association members' access to fishing. The Association later joined the lawsuit, the individual members withdrew, and the Association was the sole plaintiff by the time of trial.

¶ 7    Trial began in October 2020. At the close of evidence, the district court dismissed the Association's claim against ECRD on statute of limitations grounds. The remaining claims went to the jury, which found that (1) ECO breached the management agreement; (2) Wheeler breached his fiduciary duties; and (3) YZ Ranch breached the duty of good faith and fair dealing but did not breach the specific terms of the fishing lease.

¶ 8    After trial, the district court denied the Association's request for permanent injunctive relief against YZ Ranch. The Association appealed, and a division of this court reversed the order denying the Association's request for a permanent injunction and remanded the case "for findings on all of the relevant injunction factors, including whether the association actually succeeded on the merits of its claims against YZ [Ranch]." *Elk Creek Ranch Owners Ass'n. v. Wheeler*, slip op. at ¶ 23 (Colo. App. No. 21CA0426, June 23, 2022)

(not published pursuant to C.A.R. 35(e)). On remand, the district court granted a permanent injunction in favor of the Association and against YZ Ranch.

¶ 9 The district court then turned to the parties' requests for attorney fees and costs. The court said that it would bifurcate the fee proceedings into a liability phase (in which it would determine which parties, if any, were entitled to recover fees and costs) and a damages phase (in which it would determine the amount of fees and costs, if any, it would award).

¶ 10 On August 20, 2024, the court issued its order addressing the parties' entitlement to fees and costs. As relevant here, it determined that (1) the Association was entitled to recover fees and costs from ECO; (2) ECRD was entitled to recover fees and costs from the Association; and (3) the Association was not entitled to recover fees and costs from YZ Ranch.

¶ 11 On April 4, 2025, following an evidentiary hearing, the district court issued its order addressing the amount of attorney fees and costs awarded. In particular, it ordered the Association to pay ECRD $1,261,649.10 in attorney fees.

¶ 12    The Association appealed, and ECRD and YZ Ranch (together, defendants) cross-appealed.  This court then ordered all parties to show cause why those portions of the appeal and cross-appeal seeking review of the district court's August 2024 order should not be dismissed as untimely filed.[3]  After the parties responded, a motions division of this court deferred the order to the merits division for resolution.

## II.    Appellate Jurisdiction

¶ 13    Defendants contend that we lack jurisdiction to review the district court's August 2024 order denying the Association's request for an award of attorney fees and costs against YZ Ranch.  They contend that because the August 2024 order fully resolved this action as it relates to YZ Ranch, it constituted a final, appealable postjudgment order, making the Association's notice of appeal — filed nine months later, on May 21, 2025 — untimely.  We disagree.

¶ 14    "Under C.A.R. 4(a), a party in a civil case must file a notice of appeal within forty-nine days after the entry of a final judgment or order, unless the deadline is extended by a timely filed C.R.C.P. 59

---

[3] Defendants' cross-appeal was later dismissed for failure to prosecute.

6

motion." *Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co.*, 2023 COA 66, ¶ 13. "A party's failure to file a timely notice of appeal generally deprives this court of jurisdiction to review the merits of the appeal." *Id.*

¶ 15 Colorado courts use a two-part test to determine the finality of postjudgment orders such as those addressing requests for attorney fees and costs. *Id.* at ¶ 16. First, we ask whether the order ends "the particular part of the action in which it is entered, leav[ing] nothing further for the court pronouncing it to do in order to completely determine the rights of the parties as to that part of the proceeding." *Luster v. Brinkman*, 250 P.3d 664, 667 (Colo. App. 2010). And second, we consider whether the order is "more than a ministerial or administrative determination" — that is, whether it "affects rights or creates liabilities not previously resolved by the adjudication of the merits." *Id.*

¶ 16 An order *granting* attorney fees is not final until the district court sets the amount of fees. *Axtell v. Park Sch. Dist. R-3*, 962 P.2d 319, 322 (Colo. App. 1998). But no published Colorado case has addressed the question presented here: whether, in a case involving multiple fee requests by multiple parties, the portion of an order

7

*denying* a fee request as to one party is final for purposes of appeal while other fee requests remain unresolved.

¶ 17     We conclude that the portion of the district court's order denying the Association's request for fees against YZ Ranch was not final under the first prong of the test articulated in *Luster* because it did not end "the particular part of the action in which it [was] entered" — namely, the postjudgment action for attorney fees and costs. *Luster*, 250 P.3d at 667. Although, in the August 2024 order, the court denied the Association's fee request against YZ Ranch, it granted the Association's fee request against ECO and ECRD's fee request against the Association. Until those granted fee requests were reduced to sums certain, we cannot say that there was "nothing further for the court . . . to do in order to completely determine the rights of the parties as to that part of the proceeding." *Id.*

¶ 18     Our conclusion is supported by federal cases directly addressing the finality of postjudgment orders resolving fee requests against fewer than all parties. *See id.* at 666-67 (noting that federal appellate jurisdiction also depends on finality, and "[a]ccordingly, we may turn to federal cases to assist us in determining the

appropriate test"); *Baldwin v. Bright Mortg. Co.*, 757 P.2d 1072, 1074 (Colo. 1988) (looking to the federal law discussing finality as persuasive authority).

¶ 19    In *Mayer v. Wall Street Equity Group, Inc.*, the Eleventh Circuit Court of Appeals held that "[o]nly if a postjudgment order is 'apparently the last order to be entered in the action' is it final and appealable." 672 F.3d 1222, 1224 (11th Cir. 2012) (quoting *Delaney's Inc. v. Ill. Union Ins. Co.*, 894 F.2d 1300, 1304 (11th Cir. 1990)). Accordingly, in that case, an order denying two parties' requests for attorney fees was not final and appealable when a third party's fee request remained pending before the district court. *Id.* at 1223. "For us to hold otherwise," the court noted, would invite "litigants to appeal every attorney's fee order, even if other requests remain outstanding, resulting in a proliferation of piecemeal or repetitious appeals." *Id.* at 1224.

¶ 20    Likewise, in *In re Syngenta AG MIR 162 Corn Litigation*, 61 F.4th 1126, 1171 (10th Cir. 2023), the Tenth Circuit Court of Appeals held that individual orders allocating portions of an aggregate attorney fee award in complex multidistrict litigation were not final and appealable until the court allocated the entire award.

Relying on *Mayer*, the court concluded that the fee proceedings "constitute[d] one, post-judgment litigation that only concluded with the filing" of the final allocation order. *Id.* at 1173. Thus, appeals filed before the final allocation order were premature, "such that at the time when they were filed, [the court] did not have jurisdiction to review them." *Id.* at 1173-74.

¶ 21 We find these cases persuasive and conclude that postjudgment fee proceedings are not final for purposes of appeal until the district court has resolved all outstanding issues concerning all parties' fee requests. To hold otherwise, as the Eleventh Circuit cautioned in *Mayer*, 672 F.3d at 1224, would lead to "piecemeal or repetitious appeals": here, for instance, the Association would have had to appeal *twice* in a single fee proceeding — once after the district court's August 2024 order denying its fee request against YZ Ranch and again after the court's April 2025 order reducing the granted fee and cost awards to sums certain. Such a result cannot be reconciled with *Luster*'s requirement that a postjudgment order is not final unless it ends "the particular part of the action in which it is entered, leav[ing] nothing further for the court pronouncing it to do in order to

10

completely determine the rights of the parties as to that part of the proceeding." *Luster*, 250 P.3d at 667.

¶ 22 Accordingly, the Association's notice of appeal filed on May 21, 2025 (less than forty-nine days after the court's April 4, 2025, order) was timely, and we have jurisdiction over the appeal. We now turn to the Association's contentions.

### III. The Association's Request for Fees and Costs Under the Fishing Lease

¶ 23 The Association contends that the district court erred by determining that it could not recover attorney fees and costs from YZ Ranch under the fishing lease. We agree.

### A. Additional Background

¶ 24 Section 11.15 of the fishing lease contains the following fee-shifting provision:

> *Attorney's Fees.* In the event of a default on the part of either party in the performance of any of the terms and conditions of this Lease, the defaulting party agrees to pay any and all attorneys' fees and expenses incurred by the non-defaulting party as a result of such default, including attorneys' fees and expenses incurred by the non-defaulting party in connection with any litigation or negotiations resulting from such default or breach of the terms of this Lease.

11

The Association argued that it was entitled to recover its attorney fees and costs because the jury's finding that YZ Ranch breached the implied duty of good faith and fair dealing amounted to a default in the performance of any of the terms and conditions of the fishing lease.

¶ 25    But instead of relying on the plain meaning of the word "default," the district court looked to a different provision of the fishing lease — section 8.1 — which defines "Default" (with a capital "D").  Under that provision, a "Default" means a "Default by Tenant," which may occur in several ways, including the Tenant's failure to pay rent.  "Tenant," another defined term, means ECO, the Association's management company.  The district court reasoned that, because YZ Ranch had not committed (and, indeed, could not commit) a "Default" as defined in section 8.1 — that is, a "Default by Tenant" — its breach of the duty of good faith and fair dealing was not a "default" for purposes of the fee-shifting provision in section 11.15.

B.    Standard of Review

¶ 26    We review a district court's interpretation of a contractual fee-shifting provision de novo.  *S. Colo. Orthopaedic Clinic Sports Med. &*

12

*Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 8. In doing so, "[w]e should give an unambiguous fee-shifting provision its plain and ordinary meaning, and we should interpret it in a 'common sense manner.'" *Id.* at ¶ 11 (quoting *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1259 (Colo. App. 2008)). Further, we should avoid "[a]ny construction that would render any clause or provision unnecessary, contradictory, or insignificant." *In re Estate of Gattis*, 2013 COA 145, ¶ 36 (quoting *Mapes v. City Council*, 151 P.3d 574, 577 (Colo. App. 2006)).

## C. Discussion

¶ 27 The Association argues — and we agree — that the district court erred by equating the undefined term "default" in section 11.15 with the defined term "Default" in section 8.1, effectively rendering the fee-shifting provision meaningless for the Association. Under section 11.15, fee-shifting is triggered by "a default on the part of either party in the performance of any of the terms and conditions of this Lease." By holding that YZ Ranch by definition could not commit a default, the district court's interpretation nullified any possibility of the fee-shifting provision operating in the Association's favor. This approach contradicts the plain language of

13

section 11.15, which clearly contemplates an award of attorney fees in favor of the nondefaulting party upon "a default on the part of *either party*." (Emphasis added.) *See Gattis*, ¶ 36; *see also Mapes*, 151 P.3d at 577 ("To determine the meaning of a contract, courts are guided by the general rules of contract construction and should seek to give effect to all provisions so that none will be rendered meaningless.").

¶ 28     A defined term in a contract carries the specific meaning that the parties assigned to it. In contrast, an undefined term is no different than any other term and must be given its plain and ordinary meaning. The Third Circuit Court of Appeals' decision in *Derry Finance N.V. v. Christiana Companies*, 797 F.2d 1210 (3d Cir. 1986), is instructive on this point. There, the Third Circuit rejected an argument that the undefined term "default" was interchangeable with the defined term "Event of Default" in a series of promissory notes. *Id.* at 1213. The court held that "the unambiguous meaning of default is its plain meaning, failure to pay or perform." *Id.* The court noted that "an examination of the purposes served by the two terms further convinces us that they are not functional equivalents." *Id.* at 1214.

14

¶ 29    Here, the capitalized term "Default" in section 8.1 is defined as a "Default by Tenant" and governs YZ Ranch's rights and remedies in the event of certain actions by the Association.  The uncapitalized term "default" in section 11.15 is undefined and is used to describe the action, *by either party*, that will trigger the fee-shifting provision.  "[T]he purposes served by the two terms" are not the same.  *Id.*  We thus conclude that the district court erred by determining that a "default" under section 11.15 could occur only in the event of a "Default" under section 8.1.

¶ 30    Because section 8.1's definition of "Default" does not apply to section 11.15, we must interpret the word "default" according to its plain and ordinary meaning.  *See W. Stone & Metal Corp. v. DIG HP1, LLC*, 2020 COA 58, ¶ 10.  The term is commonly understood as a failure to do something required by duty or law or a failure to fulfill an obligation.  *See* Merriam-Webster's Collegiate Dictionary 325 (11th ed. 2004) (defining "default" as "failure to do something required by duty or law"); Webster's Third New International Dictionary 590 (2002) (same); Oxford Dictionary of English 457 (3d ed. 2010) (defining "default" as "failure to fulfil an obligation, especially to repay a loan or appear in a law court"); *see also*

15

Black's Law Dictionary 526 (12th ed. 2024) (defining "default" as "[t]he omission or failure to perform a legal or contractual duty").

¶ 31    *Jones v. Riche*, 2009 UT App 196, ¶ 2, is instructive in determining whether "default" includes a breach of contract. In that case, the fee-shifting provision — using language materially similar to section 11.15 — stated that "in the event of default by either party," the "defaulting party shall pay all costs and expenses of enforcing the same, including reasonable attorney's fees." *Id.* The *Jones* court held that, under the plain meaning of that clause, "default" was synonymous with breach of contract. *Id.* at ¶ 3. Proof of a breach therefore rendered the breaching party liable for the other party's attorney fees and costs. *Id.* As the court explained,

> The jury in this case, by special verdict, found that the Riches breached the contract. Because the rental agreement clearly provided that the defaulting party must pay the other side's attorney fees, the jury's finding that the Riches breached the rental agreement unavoidably leads to the conclusion that the Riches were the defaulting parties, and as such would be responsible for the Joneses' attorney fees incurred in enforcing the agreement.

*Id.* (footnotes omitted).

¶ 32    In this case, the parties' intent to treat "breach" and "default" as synonymous under the fishing lease is even more evident. Section 11.15 explicitly equates the terms by providing that, in the event of a default, the defaulting party must pay the "attorneys' fees and expenses incurred by the non-defaulting party . . . in connection with any litigation . . . resulting from *such default or breach*." (Emphasis added.)

¶ 33    Given this definition, the next question is whether YZ Ranch defaulted in "the performance of any of the terms and conditions of [the fishing lease]." In light of the jury's finding that YZ Ranch breached the duty of good faith and fair dealing, the answer is yes. As the previous *Elk Creek* division explained, "The implied duty of good faith and fair dealing is not separate from the contract; it is part of it. Indeed, it is well established that the duty of good faith is inherent in every contract and that a breach of the duty of good faith breaches the contract itself." *Elk Creek,* No. 21CA0426, slip op. at ¶ 17 (citations omitted); *see also Eggett v. Wasatch Energy Corp.,* 2004 UT 28, ¶ 14 (noting that a violation of an implied covenant of good faith and fair dealing is a breach of contract); *Fishoff v. Coty Inc.,* 634 F.3d 647, 653 (2d Cir. 2011) ("A breach of

the duty of good faith and fair dealing is considered a breach of contract."). Accordingly, a breach of the duty of good faith and fair dealing constitutes a breach of contract.

¶ 34 We are not persuaded otherwise by defendants' argument that "[t]he duty of good faith and fair dealing is not . . . a 'term and condition' of a contract" and that, although YZ Ranch admittedly breached the contract, it did not breach the contract's "terms and conditions." As an initial matter, YZ Ranch did not raise this argument below, and "[a]rguments never presented to . . . a trial court may not be raised for the first time on appeal." *Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992). But even exercising our discretion to consider this argument, *see Deutsche Bank Tr. Co. Ams. v. Samora,* 2013 COA 81, ¶ 38 ("An appellate court may affirm the trial court's ruling based on any grounds that are supported by the record."), we conclude that it is inconsistent with Colorado law governing the duty of good faith and fair dealing.

¶ 35 In Colorado, every contract includes an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995). The duty of good faith and fair dealing applies "when

18

the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* The purpose of this doctrine is to ensure the intentions of the parties are honored and their reasonable expectations are met. *Id.* However, it cannot be used to "contradict terms or conditions for which a party has bargained." *Id.*

¶ 36 The previous *Elk Creek* division identified several discretionary provisions in the fishing lease: (1) the Landlord "*may*, from time to time, designate reasonable ingress and egress points for Tenant to use" to protect agricultural and ranching interests; (2) "during big game hunting season, for safety reasons, fishing access *may* be limited by Landlord"; and (3) "[d]uring spawning season, Landlord *may* restrict fishing in spawning sensitive areas." *Elk Creek*, No. 21CA0426, slip op. at ¶ 10 (emphases added). The division noted that "the jury's breach of good faith finding" was supported by evidence that YZ Ranch breached these provisions by failing to exercise its discretionary authority in good faith and in a reasonable manner. *Id.* at ¶¶ 10-11, 20. Accordingly, under section 11.15, YZ Ranch's breach of the duty of good faith and fair dealing constituted

"a default . . . in the *performance*" of the contract's terms and conditions.  (Emphasis added.)

¶ 37     We thus conclude that the Association may recover its reasonable attorney fees and costs from YZ Ranch under section 11.15 of the fishing lease.

## IV.   The Fee Award to ECRD

¶ 38     The Association contends that the district court erred by awarding $1,261,649.10 in attorney fees to ECRD.  We agree.

## A.     Additional Background

¶ 39     As previously discussed, the district court dismissed the Association's claim against ECRD on statute of limitations grounds at the close of evidence.  As a result, the court determined that ECRD, as the prevailing party, was entitled to recover its attorney fees and costs from the Association under the fee-shifting provision in section 21.16 of the "Declaration of Protective Covenants for Elk Creek Ranch."  That provision states, in relevant part, as follows:

> *Costs and Attorneys' Fees.*  If any proceedings are instituted in a court of law in connection with the rights of enforcement and remedies provided in this Declaration, the prevailing party in such proceedings shall be awarded by the court reimbursement of its costs and

20

> expenses, including reasonable attorneys' fees,
> in connection therewith.

¶ 40    Defendants' counsel did not attempt to calculate the fees incurred specifically "in connection" with the Association's claim against ECRD.  Instead, counsel claimed that ECRD was entitled to recover fifty percent of all fees incurred by all defendants in defending against all of the Association's claims.  At the fee hearing, defendants' counsel acknowledged that he did not attempt to identify and eliminate billing entries for work performed solely on the Association's claims under the fishing lease or against ECO, on which the Association prevailed at trial.

¶ 41    In its April 2025 order, the district court found that "the method used by [defendants' counsel] to allocate fees to . . . ECRD is not reasonable."  Specifically, the court found that defendants' counsel "made little to no effort to actually determine what fee entries actually related to the ECRD claim"; claimed fees that "were actually spent on the fishing lease issues only"; and "included 50% of time spent on ECO issues even though they were not awarded attorney fees on the ECO claims."  The court also found the case was overstaffed.  The court then determined that, "[b]ased on the

overstaffing and the failure to review the individual entries to determine what work was actually attributable to the ECRD claim," it would "apply[] a 25% reduction to the fee request." Accordingly, the court awarded $1,261,649.10 in attorney fees to ECRD against the Association.

## B.     Standard of Review

¶ 42     "We review the reasonableness of a trial court's award of attorney fees for an abuse of discretion." *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 16. A court abuses its discretion when it misapplies the law or when its "actions are manifestly arbitrary, unreasonable, or unfair." *Id.*; *Plan. Partners Int'l, LLC v. QED, Inc.*, 2013 CO 43, ¶ 12.

## C.     Discussion

¶ 43     "A court makes an initial estimate of a reasonable attorney fee by calculating the lodestar amount." *Payan*, ¶ 18. "The lodestar amount represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate." *Id.*

¶ 44     In calculating the lodestar amount, the court "must begin by determining the reasonable number of hours expended by counsel in working on the case." *Id.* at ¶ 21. At this first step, the court

should exclude hours that were not "reasonably expended" and make "deductions for overstaffing and for hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at ¶ 23 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Then, after applying such deductions as necessary, "[t]he reasonable number of hours is . . . to be multiplied by the reasonable hourly rate to calculate the lodestar amount." *Id.* at ¶¶ 21, 23.

¶ 45 In *Payan*, the division held that the district court erred by beginning its lodestar calculation with a number of hours it found to be unreasonable and *then* applying deductions "based on the unreasonableness of the time expended." *Id.* at ¶ 22. The Association argues, and we agree, that the district court here made the same error: It started with an unreasonable number of hours — due to overstaffing and inclusion of time spent defending against claims for which ECRD was not entitled to fees — and then made a deduction only after calculating the lodestar. Instead, the court should have excluded hours not reasonably expended before calculating the lodestar. As in *Payan*, this approach resulted in error.

¶ 46    We are not persuaded otherwise by defendants' argument that the court's methodology was proper because roughly half of counsel's time was spent on "intertwined" claims "arising from alleged accounting misconduct" by ECRD, ECO, and Wheeler. Even if that is true, ECRD cannot recover attorney fees for time spent litigating the Association's claims against ECO. On the contrary, in a ruling not contested on appeal, the court found that the Association, as the prevailing party, was entitled to recover attorney fees from ECO.

¶ 47    We thus conclude that the district court's fee award of $1,261,649.10 to ECRD constituted an abuse of discretion.

## V.    Disposition

¶ 48    The district court's orders (1) ruling that the Association could not recover attorney fees and costs from YZ Ranch and (2) awarding $1,261,649.10 in attorney fees to ECRD are reversed. We remand the case to the district court to determine (1) the amount of reasonable attorney fees and costs the Association is entitled to recover from YZ Ranch; and (2) the amount of reasonable attorney fees ECRD is entitled to recover from the Association, beginning with the reasonable number of hours spent litigating the

Association's claim against ECRD before multiplying by a reasonable hourly rate to calculate the lodestar amount.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.